UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Crim. No. 08-40088 |
| ) | |
| CARLOS MENDOZA DEL-RIO, ) | |
| ) | |
| Defendant. ) | |

ORDER

The court has considered the evidence and arguments presented at the evidentiary hearing on the Motion to Suppress [#8] evidence, and cases cited.

1. The defendant is charged in this case with unlawful re-entry into the United States after having been deported from the United States for a prior conviction for commission of an aggravated felony, in violation of Title 8 U.S.C § 1326(a) and (b)(2).

2. At approximately 10:30 a.m. on November 16, 2008, Trooper Brian Strauss of the Illinois State Police was conducting traffic enforcement on Interstate 80 in Henry County near Geneseo, Illinois. Trooper Strauss was parked in an emergency vehicle "turn-around area" in the middle of the interstate, facing the westbound lanes, when he observed a car driven by the defendant following within three seconds of the vehicle in front of it. According to Trooper Strauss, the defendant's vehicle passed his parked squad car within 2-3 seconds of the lead vehicle passing him. Considering the speed limit (65 miles per hour), Trooper Strauss concluded that the defendant was not maintaining the proper distance, and initiated a traffic stop for the offense of "following too closely".

3. Under the Illinois Motor Vehicle Code, "the driver of a motor vehicle shall not

1

follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the roadway." 625 ILCS 5/11-710.

4.      On cross-examination, Trooper Strauss agreed with defense counsel's mathematical calculations that a motor vehicle traveling at the speed of 65 m.p.h. would be traveling at the rate of 95.3 feet per second. (5280 feet per mile; 5280 feet x 65 mph = 34200 feet traveled in one hour; 34200 feet divided by 60 minutes = 5720 feet traveled in one minute; 5720 divided by 60 seconds = 95.3 feet traveled per second).

5.      After pulling the defendant's vehicle over, Trooper Strauss approached the defendant and asked for his driver's license, vehicle registration information, and proof of insurance. In response, the defendant produced a valid Mexican driver's license in the name of Carlos Mendoza-Del Rio. Noticing that the vehicle was registered in Arizona, Trooper Strauss asked the defendant about the identity of the vehicle's registered owner. The defendant responded that his wife, who lived in Arizona, was the registered owner of the vehicle. The defendant also told Trooper Strauss that he was headed to New York.

6.      With the defendant's Mexican driver's license in hand, Trooper Straus returned to his squad car and ran a computerized records check on the defendant using the defendant's name and date of birth. The records check, which took 5 - 10 minutes, revealed that the defendant was a previously deported felon, and directed law enforcement to contact the Bureau of Immigration and Customs Enforcement ("ICE") to confirm identity and for further information on the availability of an ICE Immigration Detainer.

7.      While the Illinois State Police Headquarters contacted ICE to confirm the defendant's identity and status in the country, Trooper Strauss escorted the defendant to

the front seat of his squad car.  At that time he was under arrest.  Within 20 minutes ICE confirmed that the defendant was a previously deported felon, whose current presence in this country was unlawful.  Trooper Strauss was further advised that ICE intended to issue an Immigration Detainer.  A photograph of the defendant was e-mailed to Trooper Strauss's squad car for further confirmation of the defendant's identity.  That process caused an additional delay of about an hour.  After confirming that the image in the photograph matched the defendant, Trooper Strauss transported the defendant to the Henry County Jail.

Defendant complains about the events following his stop, and also that he was held an unreasonable time before he was arrested.  The court disagrees. The court finds that everything that happened after the stop was reasonable under the circumstances. From the moment the trooper learned from his dispatcher that, based on the birth date and the Arizona address, the defendant was in the country illegally, probable cause existed to place him under arrest.  The fact that the trooper waited by the road side for another hour to confirm the identity of the defendant by photo does not in any way point away from probable cause.  If anything, the trooper should be commended for utilizing that process to avoid the possibility that the person the trooper had in custody was not the person who was in the country illegally.  In the same positive vein,  the trooper was kind enough to place a phone call for the defendant to his family while they were waiting for the photo to arrive.

However, the court does have a problem with the issue of whether the trooper had probable cause to stop the car the defendant was driving on a charge of following too closely.  The trooper may have been trained that any vehicle following less than three

seconds behind the vehicle ahead of it is traveling too closely, but that doesn't make it so.

There was no testimony submitted concerning the estimated speed of the first vehicle. That is important, because if the first car was traveling faster than the second car, it was actually increasing the distance between the two vehicles as time passed. The statute specifically requires that the officer have "due regard for the speed of the vehicles," not just one of the vehicles.

In addition, mechanically applying the three second rule results in some arguably ridiculous results if that is the only measure of whether the distance separating the two vehicles was too close. At the evidentiary hearing the defense introduced a two page exhibit (Defendant's Exhibit 2), which mathematically set out the distance that a vehicle would travel in one second and three seconds, depending on a speed of either 65 mph or 60 mph. Page one demonstrates that at 65 mph a vehicle would travel 95.3 feet in one second and 285.9 feet in 3 seconds. Page two demonstrates that at 60 mph a vehicle would travel 88 feet in one second and 264 feet in three seconds.

Trooper Myers could not say exactly at what point the second car passed him during his three second count. But based on the totality of his testimony it appears that it was somewhere close to the two second count. In two seconds the car would travel 176 feet at 60 mph and 190.6 feet at 65 mph. Try as it might, the court cannot find under the road conditions at that time that following the lead vehicle by 176 feet or 190.6 feet could constitute probable cause that the defendant's vehicle was traveling too closely under the wording of the statute.

The court asked the trooper if he had any estimate of how many car lengths separated the two vehicles, but he was unable to give an estimate.

Therefore, based on this record, the Motion to Suppress [#8] is Granted.

Entered this 20th day of April, 2009.

s/ Michael M. Mihm  
MICHAEL M. MIHM  
UNITED STATES DISTRICT JUDGE