IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Crim. No. 08-40088 |
| ) | |
| CARLOS MENDOZA DEL-RIO, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Before the Court is Defendant Carlos Mendoza Del-Rio's ("Mendoza") Motion to Suppress Evidence [#14]. First, Mendoza moves to suppress his fingerprints taken on both November 16, 2008, at the Henry County Jail, and on December 3, 2008, at the ICE detention facility in Chicago, Illinois. Second, Mendoza moves to suppress his statement made on December 3, 2008, at the detention facility in Chicago, Illinois. For the reasons set forth below, the Motion to Suppress both sets of fingerprints is DENIED and the Motion to Suppress his statements is GRANTED.

**PROCEDURAL HISTORY**

Mendoza was indicted on December 16, 2008, on one count of unlawful reentry after deportation, in violation of 8 U.S.C. § 1326(a). One December 18, 2008, he was arraigned. On March 20, 2009, Mendoza filed a Motion to Suppress [#8]. Mendoza sought to suppress all items of physical evidence seized from defendant by Illinois State Trooper Strauss ("Trooper Strauss") during the November 18, 2008, traffic stop, as well as all statements made by Mendoza to Trooper Strauss because the traffic stop was made without probable cause. On April 1, 2009, the Court granted this Motion to

1

Suppress [#8], holding that Trooper Strauss did not have probable cause to stop the car on a charge of following too closely. The Court held a supplemental hearing on June 3, 2009. At this hearing, the Court denied Mendoza's Motion to Suppress with respect to fingerprints collected on November 16, 2008, and December 3, 2008, and granted Mendoza's Motion to Suppress with respect to statements made on December 3, 2008. This order follows.

## BACKGROUND

The material facts at issue are largely undisputed.

Mendoza is charged in this case with unlawful re-entry into the United States after having been deported from the United States after previous having been convicted of an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). On November 16, 2008, Trooper Strauss initiated a traffic stop against Mendoza for the offense of "following too closely." After the traffic stop, Mendoza presented his valid Mexican driver's license, which Trooper Strauss used to run a computerized records check on Mendoza. The records check revealed that the Defendant was a previously deported felon and directed law enforcement to contact the Bureau of Immigration and Customs Enforcement ("ICE"). ICE subsequently confirmed that Mendoza was a previously deported felon whose current presence in the country was unlawful. Trooper Strauss was advised that ICE intended to issue an Immigration Detainer. A photograph of Mendoza was e-mailed to Trooper Strauss' squad car for further identity confirmation. After confirming that the image in the photograph matched Mendoza, Trooper Strauss arrested and transported Mendoza to the Henry County Jail where he was fingerprinted.

On November 18, 2008, Mendoza was transported to the Dodge County Wisconsin Jail by ICE Agent Shevela ("Shevela"). On December 3, 2008, Mendoza was transported to the Chicago Detention Removal Operations ("DRO") in Chicago, Illinois for removal processing. At the DRO unit, ICE Agent Douglas Standerfer ("Standerfer") read Mendoza his Miranda rights, questioned him, took a sworn statement, fingerprinted him, and served him with a form I-871 Notice of Intent/Decision to Reinstate Prior Order. On December 16, 2008, Mendoza was indicted for the offense of illegal re-entry of a previously deported alien in violation of 8 U.S.C. § 1326(a). On December 18, 2008, Mendoza was arraigned on the Indictment and ordered detained.

## DISCUSSION

Mendoza was arrested without probable cause and without a warrant. He was detained at Henry County Jail, was fingerprinted, and was later transferred to a Chicago DRO unit. Thereafter, while in custody, he was given the warnings prescribed by *Miranda v. Arizona*, 384 U.S. 436 (1966) and was again fingerprinted, was questioned, and made inculpatory statements.

Mendoza asks that the Court suppress all evidence on the grounds that the Fourth Amendment's exclusionary rule should bar the Government in this case from using any evidence at trial obtained by its agents following Mendoza's illegal stop and seizure. In response, the Government argues that the evidence should not be suppressed because evidence of identity, like fingerprints, cannot be suppressed even if they come after an unlawful traffic stop. Furthermore, the Government argues that Mendoza's statement should not be suppressed because it was sufficiently attenuated

from the illegal arrest so as to be admissible.

I. *The Court finds that fingerprints are admitted because they were part of the administrative process*.

The Court finds that the fingerprint evidence taken on November 16, 2008, at the Henry County Jail and the fingerprints derived from Defendant on December 3, 2008, at the ICE detention facility in Chicago, Illinois are admissible as they were taken for administrative purposes, and not in furtherance of a criminal investigation.

The court in *Olivares-Rangel* held that when police officers use an illegal arrest as an investigatory device in a criminal case "for the purpose of obtaining fingerprints without a warrant or probable cause" then the fingerprints are inadmissible under the exclusionary rule as a "fruit of illegal detention." When fingerprints are "administratively taken... for the purpose of simply ascertaining... the identity" or immigration status of the person arrested, they are "sufficiently unrelated to the unlawful arrest that they are not suppressible." *U.S. v. Olivares-Rangel*, 458 F.3d, 1104, 1112-1116 (10th Cir. 2006). In his motion and argument, Mendoza fails to adequately persuade that either set of fingerprints was taken in an investigatory fashion, other than to assert "clearly, all such evidence was obtained as a result of the government agents' exploitation of the initial illegal stop and seizure of Mr. Mendoza Del-Rio, and the investigative processes that flowed therefrom." (Def. Supp. Mot., 6). The Court finds that this assertion is not supported by the record.

The Supreme Court held in *INS v. Lopez-Mendoza* that "the 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or

interrogation occurred." *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984). The record evidence supports the Government's assertion that when fingerprints were taken at the Henry County Jail on November 16, 2008, and again on December 3, 2008, at the ICE detention facility, they were taken as part of a routine booking process for the purpose of confirming Mendoza's identity, and not for the purpose of investigating a crime.

The extraordinarily broad holding in *INS v. Lopez-Mendoza* in conjunction with the usage of the word "never" underlies this Court's decision. Both sets of fingerprint evidence are admissible.

II. *The Court finds that the statement is not allowed because it was not legitimately part of the administrative process.*

In the absence of an administrative justification for Standerfer's questioning of Mendoza, the Court finds that said questioning served as a predicate for criminal prosecution.

Mendoza argues that the statement resulted from "the government agents' exploitation of the initial illegal stop and seizure of Mr. Mendoza Del-Rio, and the investigative process that flowed therefrom." (Def. Supp. Mot., 6). Here, the burden lies on the Government to prove that the December 3, 2008 statement was not the result of an administrative procedure.

The Government argues that Mendoza's statements are admissible. The Government relies on *Wong Sun v. United States*, which advances the theory that if the taint from an illegal act is sufficiently dissipated, the Fourth Amendment does not require suppression of the evidence seized after the illegality. *See Wong Sun v. United*

5

*States*, 371 U.S. 471, 488 (1963).

> "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Maguire, Evidence of Guilt, 221 (1959)."

However, the Court does not find the facts of the *Wong Sun* case and of this case to be similar. Wong Sun's confession was made "after his lawful arraignment and release on his own recognizance, and [after] his return voluntarily several days later to make the statement" so that the connection between his unlawful arrest and the statement "had become so attenuated as to dissipate the taint." *Id.* at 599 (*quoting Nardone v. United States*, 308 U.S. 338(1939)). Here, Mendoza was kept in custody from the time of his unlawful arrest until the time his statement was made 17 days later. The connection between Mendoza's unlawful arrest and his statement was clearly not attenuated nor had the taint dissipated.

The Government proffers the guidelines set out in *Brown v. Illinois* in support of its claim that Mendoza's statement was sufficiently attenuated to be admissible. In *Brown*, the Supreme Court listed four factors to consider in determining whether a statement is obtained by exploitation of an illegal arrest: (1) whether Miranda warnings were administered; (2) the temporal proximity of the arrest and the confession; (3) the presence of intervening circumstances; and, particularly, (4) the purpose and flagrancy of the official misconduct. *Brown v. Illinois*, 422 U.S. 590, 604 (1975).

In analyzing the *Brown* factors, the Court finds that the record is clear that the ICE agent correctly and appropriately administered the Miranda warnings. Furthermore,

there is no evidence to suggest that the taint would remain due solely to temporal proximity, as Mendoza was arrested on November 16, 2008, and he made his statement on December 3, 2008.  However, the Government fails on the third *Brown* element in that it asserts other intervening circumstances between the traffic stop and Mendoza's statement.  The Court does not recognize the transfer from the Henry County Jail to the Dodge County Wisconsin Jail to the Chicago DRO Unit as intervening circumstances.  Finally, the Government fails on the fourth "purposeful and flagrant" element of the *Brown* analysis.  The court in *U.S. v. Reed* held that

> "'purposeful and flagrant' misconduct is not limited to situations where the police act in an outright threatening or coercive manner," and that "in addition to examining whether the officer's actions were coercive or calculated to cause surprise, fright or confusion, the... court also must examine whether the actions were undertaken in an effort to advance the investigation or to embark on a fishing expedition in the hopes that it would lead to a confession or other useful evidence." *U.S. v. Reed*, 349 F.3d 457, 465 (7th Cir. 2003).

Regarding the third *Brown* element, the Court notes that the *U.S. v. Aragon-Ruiz* court held that the statement taken from the defendant (who was arrested and then later questioned at ICE offices) was voluntarily given and was sufficiently attenuated from his illegal detention to make it admissible. *U.S. v. Aragon-Ruiz*, 551 F.2d 904, 939 (D. Minn. 2008).  This case is distinguished by the established precedent of the 7th Circuit which holds that "the type of intervening events that serve to attenuate official misconduct are those that sever the causal connection between the illegal arrest and the discovery of the evidence." *U.S. v. Reed*, 349 F.3d 457, 465.  The court ruled that although Reed's non-confrontational interrogation was a product of Miranda warnings and Reed's self-interest after a period of solitary reflection, these were not sufficient

7

conditions to be counted as intervening circumstances.

The Court is not persuaded by the Government's assertion that Mendoza's statement was merely part of an administrative process because Standerfer could have been certain of Mendoza's identity and of his previous deportation based on the fingerprint information he already had in his possession.  Also, Standerfer could have fingerprinted Mendoza on December 3rd and confirmed his identity for administrative purposes before he questioned him.  Therefore, Standerfer's interrogation of Mendoza went beyond any legitimate administrative need.  Standerfer's December 3rd interrogation of Mendoza acted as the predicate for prosecution.  Under these circumstances the taint from the initial illegal arrest remained and the statement is inadmissible.

## CONCLUSION

For the reasons set forth herein, the Motion to Suppress both sets of fingerprints is DENIED and the Motion to Suppress statement is GRANTED.

ENTERED this 16th day of June, 2009.

/s/ Michael M. Mihm  
Michael M. Mihm  
United States District Judge